UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | No. 1:04-CR-138 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| ) | |
| JOSEPH SWAFFORD and ) | |
| JES, INC. d/b/a BROADWAY HOME ) | |
| AND GARDEN CENTER ) | |

**M E M O R A N D U M**

Defendants Joseph Swafford ("Swafford") and JES, Inc., d/b/a Broadway Home and Garden Center ("Broadway Home and Garden Center") (collectively "Defendants") filed a motion to suppress (Court File No. 34) which was referred to United States Magistrate Judge Susan K. Lee to conduct an evidentiary hearing if necessary and make a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). On May 18, 2005, the magistrate judge filed a report and recommendation that Defendant's motion be granted in part and denied in part (Court File No. 47).

Defendants filed an objection to the portion of the report and recommendation denying in part his motion to suppress, contending the magistrate's ruling rested on a credibility determination that is against the weight of the evidence presented (Court File No. 48, p. 6). After carefully reviewing the transcript from the suppression hearing, the Court finds the magistrate's credibility determinations to be supported by the weight of the evidence.

**I.      Standard of Review**

This Court must conduct a *de novo* review of those portions of the report and recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C). When reviewing a magistrate's credibility determinations on a motion to suppress, the district court may accept or reject the magistrate's determinations recognizing a magistrate is in a better position to assess the credibility of witnesses he sees and hears. *United States v. Raddatz*, 447 U.S. 667, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980); *United States v. Ailemen*, 986 F. Supp. 1228 (N.D. Cal. 1997). Credibility determinations of the magistrate who personally listened to the testimony of a witness should be accepted by a district judge unless in its *de novo* review of the record it finds a reason to question the magistrate's assessment. *Blizzard v. Quillen*, 579 F. Supp. 1446 (D. Del. 1984).

**II.     Relevant Facts**

The parties have not objected to the magistrate's statement of the facts, therefore the Court will **ACCEPT** and **ADOPT** that portion of the report and recommendation (Court File No. 47, pp. 1-2). The Court here will set forth only those facts necessary to this memorandum and opinion.

A sealed indictment was returned against Defendants on September 15, 2004. On October 4, 2004, law enforcement officers made two separate visits to Defendant Swafford's store, Broadway Home and Garden Center. On the first visit, Drug Enforcement Agency ("DEA") Special Agent Dave Shelton ("Shelton") spoke with Defendant Swafford but did not place Swafford into custody or advise him of his right to counsel. On the second visit, later in the afternoon, Shelton returned to Broadway accompanied by a number of other law enforcement officers to serve a search warrant

2

on the store and an arrest warrant on Defendant Swafford. During this visit, Detective Lieutenant Tommy Farmer ("Farmer") of the Hamilton County Sheriff's Department spoke with Defendant Swafford about his conduct involved in the case. The parties are not in agreement about when Swafford was advised of his right to counsel during the second visit.

### III. Analysis

#### A. Statements from First Visit to Broadway Home and Garden Center

Neither Defendants nor the Government objected to the portion of the report and recommendation granting in part Defendants' motion to suppress as to the statements Defendant Swafford made during Shelton's first visit to Broadway Home and Garden Center on October 4, 2004. Defendants in their motion to suppress had argued the statements Defendant Swafford made during this visit must be suppressed because Defendants had been indicted before this visit, but Defendant Swafford was not advised of his Sixth Amendment right to counsel before Shelton spoke with him (Court File No. 34, p. 2). After extensive briefing both before and after the suppression hearing, the magistrate determined the offenses Shelton was investigating during this visit were the same as those for which Defendant Swafford had been indicted, and Defendant Swafford's right to counsel had attached at that point in time, thus Shelton's questioning of Swafford without informing him of his right to counsel or receiving a waiver of this right violated the Sixth Amendment (Court File No. 47, pp. 9-14). The Court agrees with the reasoning in the magistrate's report and recommendation, and finds the statements Defendant Swafford made during Shelton's first visit must be suppressed. Accordingly, the Court will **ACCEPT** and **ADOPT** this portion of the report

and recommendation.

### B. Statements from Second Visit to Broadway Home and Garden Center

#### 1. Defendant Swafford Was Advised of his Right to Counsel

Defendants assert Defendant Swafford was not informed of his right to counsel until near the end of Shelton's second visit to Broadway Home and Garden Center, thus his Sixth Amendment right to counsel was violated and all statements elicited from him by Farmer before that time must be suppressed (Court File No. 48, p. 6). Defendant's objection to the magistrate's report and recommendation rests on the magistrate's credibility determination Shelton and DEA Special Agent Chris Smith ("Smith") testified truthfully that Defendant Swafford received Miranda warnings and waived his right to counsel early in the second visit to Broadway Home and Garden Center (Court File No. 48 at 6-7).

This issue is determinative of Defendant's motion to suppress these statements. The Sixth Amendment to the United States Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. This right to counsel attaches after "adversary judicial proceedings" have been initiated, which the United States Supreme Court has defined to include an indictment. *See United States v. Gouveia*, 467 U.S. 180, 187-88 (1984) (quoting *Kirby v. Illinois*, 406 U.S. 682 (1972)). Once the Sixth Amendment right to counsel has attached for a particular charge, law enforcement officials may not use as evidence incriminating statements deliberately elicited from the accused without the presence or waiver of counsel. *See Maine v. Moulton*, 474 U.S. 159, 176 (1985).

Defendants in their objections first argue the evidence does not support the officers' testimony Defendant Swafford was advised of his right to counsel shortly after officers arrived,

4

before he spoke with Farmer and made the statements at issue. Defendants point to two inconsistencies in the officers' and Defendant Swafford's wife, Kay Swafford's ("Mrs. Swafford"), testimony that Defendants argue "plainly show" the officers' testimony is not credible (Court File No. 48 at 7). First, Smith testified he advised Defendant Swafford of his rights shortly after the officers arrived at Broadway Home and Garden Center (Tr. at 45-46), and that Farmer was present when Smith advised Defendant Swafford of his rights (Tr. at 46-47). Farmer testified he arrived as much as an hour after other agents had arrived (Tr. at 64-65) and Shelton told him Defendant Swafford had been read his rights before Farmer arrived (Tr. at 57). Defendants argue Smith's testimony dictates the conclusion that Smith could not have advised Defendant Swafford of his rights shortly after arriving at Broadway Home and Garden Center, because Farmer was not yet present at that time, and any advisement of rights must have occurred as much as late as an hour into the second visit.

The factual inconsistency between Smith and Farmer's testimony of whether Farmer had arrived before Smith advised Defendant Swafford of his rights, while real, does not go to the heart of the issue. Smith and Shelton consistently testified Smith advised Defendant Swafford of his rights shortly after their arrival (Tr. at 45-46, 82), and Farmer testified Shelton told him Swafford had been advised of his rights before Farmer arrived (Tr. at 57). The collateral inconsistency between Smith and Farmer's testimony, when taken in light of consistencies on the main issue of whether Defendant Swafford was advised of his rights at the beginning of the second visit, is not enough to compel the finding the magistrate's credibility determinations as to the officers is not supported by the evidence.

Second, Defendants note Smith and Shelton testified Mrs. Swafford was present when Smith

5

advised Defendant Swafford of his rights (Tr. at 49, 82), and Mrs. Swafford testified she did not observe Defendant Swafford being advised of his rights until the end of the officers' second visit, after Defendant Swafford spoke with Farmer and just before the officers took Defendant Swafford to jail (Tr. at 85, 91-92). Defendants argue absent Defendant Swafford being advised of his rights more than once, a fact to which no one testified and which Defendants argue Mrs. Swafford's testimony refutes, Defendant Swafford must not have been advised of his rights until the end of the officers' second visit, after his conversation with Farmer (Court File No. 48 at 8).

The Court finds no inconsistency in this testimony. First, the Court would point out Mrs. Swafford actually stated she did not know how many times Defendant Swafford was advised of his rights during the officers' second visit, she "only saw once" (Tr. at 92). Mrs. Swafford stated she was not present in the front of the store when the officers first came in and spoke to Defendant Swafford (Tr. at 93), and she did not testify with certainty that Defendant Swafford was not advised of his rights out of her sight or hearing. Additionally, there is no inconsistency between the officers recalling Mrs. Swafford as "present" in the part of the store where they advised Defendant Swafford of his rights and Mrs. Swafford not seeing or hearing any such advisement. Mrs. Swafford also testified she did not recall what the agent looked like who stayed at the front of Broadway Home and Garden Center with her, Defendant Swafford, and the grandchild for whom she was caring at the time, saying, "There was so many men around and everybody dressed in black, I don't – I didn't notice anyone in particular" (Tr. at 91). Smith, the agent who testified he advised Defendant Swafford of his rights at the beginning of the second visit, also testified he was the agent with this responsibility. The difference between her testimony and the officers' testimony, which is not an inconsistency, does not require a conclusion the officers are not credible about when they advised

6

Defendant Swafford of his rights.

Additionally, the Court does not find significant the fact that if the officers' testimony and that of Mrs. Swafford is believed, Defendant Swafford was advised of his rights twice, as Defendants argue (Court File No. 48 at 9-10). From the combined testimony of the witnesses, which, as noted above, is not in conflict, it appears Defendant Swafford was advised the officers had a warrant for his arrest at the beginning of the encounter, and was advised of his rights by Smith (Tr. at 32-33, 45-46, 71). Then, at the end of the encounter, Mrs. Swafford observed an officer other than Smith tell Defendant Swafford he was under arrest and advise Defendant Swafford of his rights (Tr. at 85) as part of the procedure for taking him to jail. The giving of Miranda warnings twice, by two different officers, the second of which may not have seen the first advise, is not "suspect," as Defendants argue (Court File No. 48 at 10); if anything, it is merely overcautious.

Finally, Defendants argue Defendant Swafford made statements after he had spoken with Farmer that indicate Swafford must not have been made aware of his right to counsel before he and Farmer had that conversation (Court File No. 48 at 8-9). Farmer testified Defendant Swafford told him, after Swafford had discussed his conduct relating to the case with him, that "you can't use this, I can talk to you, this is just between us." Farmer further testified that, after Farmer informed Swafford his statements could be used against him, Swafford stated, "Well, then I better shut up, I'm not going to say anything else that you are going to use against me" (Tr. at 61) or "I'm not going to say anything else unless I talk with an attorney, or something to that effect" (Tr. at 77). Defendants argue Defendant Swafford would not have indicated he believed his statements could not be used against him if he already had been informed of his right to counsel.

It appears from Farmer's testimony either Defendant Swafford for some reason believed his

7

conversation with Farmer could not be used against him in court, despite Smith and Shelton's credible testimony Swafford was advised of his rights (Tr. at 32, 42), or Swafford realized he may have made incriminating statements to Farmer and attempted to ensure they could not be used against him by feigning misunderstanding. If Defendants' argument on this point were successful, every criminal suspect who realized he said too much could argue, after the fact, that he would never have made any incriminating statements if he had been advised of his rights. Defendant Swafford's statements alone are not enough to compel the conclusion, unsupported by any other testimony and contradicted by the credible testimony of three law enforcement officers, that Swafford was not advised of his rights before this conversation took place.

Therefore, the Court will **ACCEPT** and **ADOPT** the portion of the report and recommendation finding the officers' testimony credible as to whether Defendant Swafford was advised of his rights at the beginning of the officers' second visit.

### 2. Defendant Swafford Effectively Waived his Right to Counsel

The Government bears a "heavy burden" of showing a suspect's waiver of his rights was both knowing and intelligent. *Miranda v. Arizona*, 384 U.S. 436, 475 (1966). When a defendant confesses in a post-indictment interview, after he was informed of and waived his Miranda rights, this may constitute a knowing and intelligent waiver of his Sixth Amendment right to counsel. *Patterson v. Illinois*, 487 U.S. 285, 296 (1988). Defendant has not pointed to any reason, other than those addressed above and already addressed in the report and recommendation, the testimony of Shelton and Smith that Defendant waived his Sixth Amendment right to counsel should not be credited. The Court finds the report and recommendation's analysis is supported by the evidence and the law, and therefore the Court will **ACCEPT** and **ADOPT** the portion of the report and

8

Case 1:04-cr-00138-CLC-SKL   Document 51   Filed 07/01/05   Page 8 of 9   PageID #: 50

recommendation finding the Government met its burden of proving Defendant knowingly and intelligently waived his Sixth Amendment right to counsel after being advised of that right.

## IV. Conclusion

For the reasons stated above, after carefully reviewing the transcript from the suppression hearing, the Court has determined the magistrate's analysis regarding the suppression of Defendant Swafford's statements during the first visit is correct, and the magistrate's credibility determinations as to Shelton and Smith regarding the second visit are supported by the evidence. Following those findings, the Court **ACCEPTS** and **ADOPTS** the magistrate's determinations the statements from the first visit must be suppressed, but the Government met its burden of proving Defendant Swafford waived his Sixth Amendment right to counsel and thus his statements from the officers' second visit to Broadway Home and Garden Center need not be suppressed.

**SO ORDERED.**

**ENTER:**

                                    **/s/**
                         **CURTIS L. COLLIER**
                   **UNITED STATES DISTRICT JUDGE**