UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | No. 1:04-CR-138 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| ) | |
| JOSEPH SWAFFORD and ) | |
| JES, INC. d/b/a BROADWAY HOME ) | |
| AND GARDEN CENTER ) | |

# **M E M O R A N D U M**

This case requires the Court to confront issues at the very heart of the adversarial process. In the American trial system the adversarial process depends upon counsel for both sides to vigorously and effectively advocate for their side. In the typical case courts do not involve themselves in the selection of counsel, relying upon a defendant's selection. However, in exceptional cases where a client's selection of counsel in a criminal case calls into question the integrity of the adversarial process, courts have a duty to intervene. This duty is not assumed lightly.

Mindful of Defendant Joseph Swafford's ("Defendant Swafford") Sixth Amendment rights, and after considering the facts as presented by the parties and the applicable law, the Court will DISQUALIFY attorneys in the firm of Shumacker, Witt, Gaither & Whitaker, PC from any further representation of Defendant Swafford.

Before the Court is a motion for judicial inquiry filed by the Government (Court File No. 60). The Government in this motion essentially argues Defendant Swafford's current counsel are suffering a conflict of interest involving Defendant Swafford's potential presentation of an "advice-

of-counsel" defense at his trial, and cannot continue to represent him in this matter. Defendant Swafford filed a response in opposition to the Government's motion (Court File No. 64) and the Government then filed a reply brief (Court File No. 65) requesting its motion be addressed before the trial in this case. The Court granted Defendant's motion to continue the trial date (Court File No. 61), which was scheduled to begin only two weeks after the Government filed its motion for judicial inquiry, in order to address these issues, and held a hearing on the Government's motion on October 3, 2005. Defendant Swafford additionally filed a Report of Independent Counsel and an affidavit under seal subsequent to this hearing (Court File Nos. 76, 77).

**I.      Facts**

Defendant Swafford and his corporate codefendant JES, Inc. d/b/a Broadway Home and Garden Center ("Defendant JES") are charged with various crimes involving the possession and sale of iodine at Broadway Home and Garden Center (Court File No. 23, Superseding Indictment). Each of these crimes involves a mental state of knowledge, intent, or reasonable cause to believe the iodine would be used in the manufacture of methamphetamine. The grand jury handed up an indictment in this case on September 15, 2004, which was unsealed when Defendant made his initial appearance on October 5, 2004 (*see* Court File Nos. 2, 7). The grand jury then issued a superseding indictment on February 28, 2005.

The issues before the Court first came to light during the final pretrial conference the Court held September 2, 2005. At that conference, attorney Tom Greenholtz appeared on behalf of Defendant Swafford and attorney Joseph Dickson appeared on behalf of Defendant JES; both of these attorneys are members of the law firm of Shumacker, Witt, Gaither & Whitaker, PC. Assistant United States Attorney Gregg Sullivan appeared on behalf of the Government but indicated Trial

2

Attorney with the Department of Justice Paul Laymon would actually be trying the case.

During the final pretrial conference, Mr. Sullivan raised the issue of Defendant Swafford presenting an advice-of-counsel defense at trial (*see* Court File No. 75, Transcript of Final Pretrial Conference September 2, 2005 ("Final Pretrial Trans.") p. 8). Mr. Greenholtz stated this issue had been brought to the Government's attention when Defendant Swafford filed proposed jury instructions (Court File No. 38), one of which dealt with this defense. Mr. Greenholtz went on to inform the Court Defendant Swafford contacted the law firm of Shumacker, Witt, Gaither & Whitaker, PC in February, March, or April of 2004 for advice, but "we do not intend to call any of the partners that Mr. Swafford called in our office or to discuss any of the advice that any of our counsel may have given to Mr. Swafford at that time" (Final Pretrial Trans. at 8-9). Mr. Greenholtz did confirm "one of the theories of the defense here is that Mr. Swafford is relying upon advice received as to the legality of certain quantities of iodine sold," but any testimony on this issue would come from "a law enforcement officer" or "someone else" rather than an attorney (*id*. at 9).

Mr. Sullivan then brought up what he perceived to be a conflict of interest for the law firm of Shumacker, Witt, Gaither & Whitaker, PC if Defendant Swafford testified to advice he received from a particular attorney (the "attorney witness") with that firm and the Government wished to call that attorney in rebuttal to that testimony (*id*. at 10). The Court inquired of Mr. Greenholtz about his ability to effectively cross-examine such a witness since that witness would be an attorney and perhaps even a partner in his law firm, and Mr. Greenholtz stated he did not see a conflict of interest arising in that situation (*id*. at 12). After further discussion with the parties did not lead to any conclusions on this issue, the Court recommended the parties consult *Wheat v. United States*, 486 U.S. 153, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988) and directed Mr. Sullivan to file a brief with

3

the Court if the Government believed the Court would need to take action on this issue prior to trial (*id*. at 13, 18).

The Government did in fact file such a brief, the motion for judicial inquiry now before the Court (Court File No. 60), which led the Court to hold a hearing on October 3, 2005. At the hearing, attorneys Hugh Moore, Steve Powers, and Mr. Greenholtz, all from the law firm of Shumacker, Witt, Gaither & Whitaker, PC, appeared on behalf of Defendant Swafford, and Mr. Laymon and Assistant United States Attorney Perry Piper appeared for the Government.

Prior to the hearing, Defendant Swafford filed an affidavit stating he was aware of the potential conflict of interest in this case, but he desired his present counsel to continue their representation (*see* Court File No. 67, Exh. 2). Attorney Hugh Moore also submitted an affidavit asserting his belief his law firm's representation of Defendant would not be adversely affected by the issues raised by the Government in its motion for judicial inquiry (*see id.*, Exh. 1). Because the Court viewed Defendant Swafford's affidavit as an attempt to waive any potential conflict that might arrive, the Court called Defendant Swafford to the lectern and inquired about his understanding of the potential conflicts of interest (*see* Court File No. 74, Transcript of Hearing on Motion for Judicial Inquiry October 3, 2005 "Hearing Trans."), pp. 5-15). The Court's inquiry included questions regarding his current defense counsel's ability to put his interest above those of their law partners or the law firm; the possibility defense counsel's credibility would be damaged if one of their law partners testified in contradiction to Defendant Swafford's testimony or if the Government attempted to show the attorney witness was incompetent as a lawyer by giving Defendant Swafford bad advice; defense counsel's ability to effectively cross-examine a law partner; defense counsel's statement they would not themselves call this attorney witness to testify although he or she might

4

corroborate Defendant Swafford's testimony; the possibility Defendant could have a legal malpractice claim against the lawyer who gave him advice and how that might affect the lawyer's testimony and defense counsel's strategy at trial with regard to such a witness; and the potential conflict's effect on sentencing considerations should Defendant Swafford be convicted (*id*.). Defendant Swafford indicated he had not sought the advice of outside counsel on these issues (*id*.). Defendant Swafford then stated he wished to waive any conflicts raised by the continued representation by his current counsel (*id*. at 15-16).

The Court indicated to Defendant it may preclude Defendant from presenting the advice-of-counsel defense at trial because of the conflict of interest issues that may arise, and Defendant stated he would be willing to waive the defense in order to retain his current counsel (*id*. at 17-18, 19). Defendant further stated he believed there were no present conflicts of interest with his defense counsel but acknowledged there could be potential conflicts, and again stated he wished to waive them (*id*. at 21-22).

The Government argued at the hearing simply that a conflict exists that should preclude Defendant Swafford's current counsel from proceeding in representing him. Mr. Laymon finally noted Defendant Swafford had a longstanding business relationship with Mr. Moore and Mr. Powers, so he found it odd Defendant Swafford called a third attorney for advice rather than one of them, and stated he may wish to call Mr. Moore and Mr. Powers as witnesses to inquire into that issue (*id*. at 33).

Defense counsel essentially argued the Government was on a fishing expedition into Defendant Swafford's potential defenses, which they had no right to discover, and also was using its motion for judicial inquiry as a harassment technique. Defense counsel further argued the cases

5

on which the Government relied in its briefs are not relevant to this situation because the type of conflict here is different from those in the cases, and that the Tennessee Rules of Professional Conduct do not preclude their representation of Defendant Swafford. Since defense counsel concluded its arguments by stating the facts in front of the Court were mere "supposition" (*id.* at 40-41, 48), and stated the facts as alleged by the Government were "wrong," (id. at 54), the Court felt it had not been fully informed of the underlying facts and invited defense counsel to share any facts they felt would be helpful to the Court in making its decision, particularly any facts underlying the advice-of-counsel defense, in a sealed *ex parte* filing (*id.* at 49-50, 57). The Government reluctantly agreed to such a filing.

Defendant Swafford requested additional time to allow an outside law firm to prepare this filing, which the Court granted (*see* Court File Nos. 68, 72). Defendant then filed a report prepared by outside counsel, *ex parte* and under seal (Court File Nos. 75, 76). The Court will not disclose the specific contents of this filing, but the Court would note it does not contain any underlying facts relevant to the advice-of-counsel defense, other than the identity of the attorney or attorneys at the firm of Shumacker, Witt, Gaither & Whitaker, PC with whom Defendant Swafford spoke prior to being indicted. This filing primarily consists of the opinion of outside counsel, after interviewing Defendant Swafford and his wife as well as the attorney or attorneys with whom he spoke and ascertaining all relevant facts, no conflict exists under the Tennessee Rules of Professional Conduct; Defendant has knowingly and reasonably waived any potential conflict; and Defendant has knowingly and reasonably waived his right to present the advice-of-counsel defense if he proceeds with his present counsel. The filing therefore presents the conclusions of the outside counsel as to the issue in front of the Court, rather than facts that would assist the Court in making its own

6

conclusions.[1] Defendant Swafford also submitted an affidavit as part of this filing reasserting, after consultation with outside counsel, his decision to waive the advice-of-counsel defense and desire to retain his current counsel despite any potential conflicts of interest (Court File No. 77).

The Court would note in both of the *ex parte* filings submitted to the Court under seal, the outside counsel and Defendant Swafford state Defendant Swafford is willing to waive the advice-of-counsel defense but has retained the ability to testify in his case-in-chief regarding his conversations with an attorney or attorneys in support of an advice-of-counsel defense. This limited waiver is not what the Court discussed with Defendant Swafford in the hearing on this matter. The Court asked Defendant Swafford, "Do you understand that in fulfilling [its obligation to ensure that trials are conducted in such a manner that the public has confidence in the fairness and correctness of the trial] the Court may allow you to retain your present counsel but the Court could preclude you from testifying about any conversations you had with anyone in counsel's law firm?" (*see* Hearing Trans. at 16-17). Defendant Swafford answered in the affirmative, and the Court then asked him, "Do you understand that if the Court did that you would not be able to offer any evidence at all of an advice-of-counsel defense?", to which he again answered in the affirmative (*id*. at 17). The Court questioned Defendant further about the waiver of this defense, reiterating he would not be able to present it "at all" and "the defense would be gone" (*id*. at 17, 19). The Court did not present to Defendant Swafford the option that he could retain his current counsel and present the defense through his own testimony, but without calling the attorney or attorneys to whom he spoke.

---

[1] The Court would note it does not appear outside counsel gave Defendant Swafford advice regarding whether he should or should not forego the advice of counsel defense. Apparently the only advice Defendant Swafford has received on this point is from his present counsel.

7

## II. Legal Analysis

The Court at the outset would reiterate its statement from the hearing on this matter that any legal analysis and conclusions in this memorandum and order are no reflection on the integrity, professionalism, or ethics of defense counsel or the firm of Shumacker, Witt, Gaither & Whitaker, PC.[2] The Court recognizes in many situations clients desire to retain their present counsel even when it is not in their own best interest, and the attorneys' obligations to the client make a decision very difficult for the attorneys. However, the Court has a higher obligation, to ensure the public has confidence in trials, as well as to ensure the criminal defendant's right to a fair trial, which guide its decision here.

### A. Advice-of-Counsel Defense Generally

The advice-of-counsel defense can, in some instances, negate the mental state element of an offense if a defendant can show he relied on the advice of an attorney in taking certain actions. The elements of a reliance on advice-of-counsel defense are (1) full disclosure of all pertinent facts to counsel, and (2) good faith reliance on counsel's advice. *United States v. Lindo*, 18 F.3d 353, 356 (6th Cir. 1994) (*citing United States v. Duncan*, 850 F.2d 1104, 116 (6th Cir. 1988)); *accord. United States v. Moss*, 69 Fed. Appx. 724, 732 (6th Cir. 2003).

The Government in its briefs and at the hearing presumed Defendant Swafford would take the stand to present the advice-of-counsel defense, because any testimony by the attorney witness as to any advice he gave Defendant or statements Defendant made to him/her would be hearsay. *See*

---

[2]The Court has the highest regard both for the law firm and the individual attorneys appearing in this case. The Court has presided over trials and hearings previously where these attorneys appeared and the Court knows them to be highly qualified and of the highest ethical standards.

8

*United States v. Hatchett*, 918 F.2d 631 (6th Cir. 1990) (no error by district court in refusing to admit testimony by tax attorney of statements defendant made to him seeking tax advice because it was hearsay offered for the truth of the matter asserted, to support the defendant's advice-of-counsel defense). Presenting this defense would require Defendant to testify specifically about what he told the attorney witness regarding the iodine sales at Broadway Home and Garden Center, and what advice the attorney gave him in return. Even if Defendant did not call the attorney witness to testify on his behalf to corroborate his testimony, the Government has indicated it would call him/her in rebuttal to any testimony by Defendant regarding this defense. Therefore, if Defendant raises this defense, the attorney witness is likely to be called to testify, if not by him, then by the Government.

      **B.**    **Conflict of Interest**

The potential conflicts of interest presented by Defendant's assertion of an advice-of-counsel defense are many, and were outlined by the Court to Defendant Swafford at the hearing, as detailed above.

As a first consideration, under Tennessee ethics rules, codified in the Tennessee Rules of Professional Conduct, a lawyer may act as an advocate at a trial in which another lawyer in his firm is likely to be called a witness unless he is precluded from doing so under Rule 1.7. *See* TN S. Ct. Rule 8, RPC 3.7 (b) (2005). Rule 1.7 states:

> A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client, or to a third person, or by the lawyer's own interests, unless:
>     (1) the lawyer reasonably believes the representation will not be adversely
>
> affected; and
>     (2) the client consents in writing after consultation.

9

TN S. Ct. Rule 8, RPC 1.7(b) (2005).

After carefully considering the facts before it, the Court has determined Defendant Swafford's present counsel's representation may be materially limited by their own (or their law firm's) interests. Defendant Swafford's present counsel may, at some subconscious level, be motivated by personal loyalty to the attorney witnesses and to their own law firm, and unwittingly make decisions that benefit them to the detriment of Defendant Swafford's defense. This has possibly occurred already in defense counsel's decision not to call the attorney or attorneys to whom Defendant Swafford spoke, even though they could corroborate any testimony Defendant Swafford may give with regard to this defense. Further, if defense counsel proceeds in not calling the attorney or attorneys to whom Defendant Swafford spoke in its case in chief, the Government has indicated it will call the attorney or attorneys in rebuttal to Defendant Swafford's testimony on this point. Defense counsel would then be required to cross examine that attorney or attorneys, which often requires calling into question the witness's credibility. The Court questions whether current defense counsel could, despite its best intentions, cross examine a law partner as vigorously as a witness with whom they have no outside relationship, as another, disinterested counsel could do. Since these witnesses are fellow attorneys at counsel's own law firm, it is likely they know personal matters about these witnesses that could be used to attack their credibility. Because of the relationship it is not likely counsel would use that information. This failure to be as effective on cross examination as possible, of course, would be to Defendant Swafford's detriment. In addition, depending on what advice the attorney or attorneys gave Defendant Swafford, it is not outside the realm of possibility he could bring a legal malpractice lawsuit against that attorney or attorneys. Again, subconsciously, Defendant Swafford's present counsel may alter their strategy in his defense at trial because of this

possibility and how it may affect the attorney or attorneys, and by extension the finances of the law firm of which they are a part.

Second, a conflict any lawyer may have individually is imputed to all members of his law firm under Tennessee's Rule 1.10. *See* TN S. Ct. Rule 8, RPC 1.7(b) (2005) (". . . while lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule[] 1.7 . . ."). Thus, a second conflict arises under Rule 1.10; since the attorney or attorneys who consulted with Defendant Swafford prior to his indictment clearly would be prohibited from representing Defendant Swafford because his representation would be limited by his own interests (in protecting himself from a potential malpractice claim or consequences in front of the Tennessee Board of Professional Responsibility), his law partners also are prohibited from representing Defendant Swafford.

Third, Mr. Laymon indicated at the hearing he may call Defendant's present counsel to testify as to the reasons Defendant Swafford, despite a longstanding business relationship with them, consulted a third attorney in the law firm for advice rather than one of them (Hearing Trans. at 33). Under the Tennessee Rules of Professional Conduct, "[a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness except where: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client." *See* TN S. Ct. Rule 8, RPC 3.7(a) (2005). The exceptions in the rule do not appear to apply in this case. Therefore, in addition to continued representation of Defendant Swafford being barred under the Rules in this situation, the likelihood the Government would call Defendant Swafford's present counsel as witnesses in this trial presents yet another potential conflict of interest between those

counsels' own interests and Defendant Swafford's interests.

Therefore, the Court finds at least one conflict of interest presently exists or could arise at trial. Rule 1.7 does allow the representation to continue pursuant to a waiver of such a conflict if "(1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents in writing after consultation." Mr. Moore filed an affidavit with the Court asserting he reasonably believes his law firm's representation of Defendant would not be adversely affected by the issues raised by the Government in its motion for judicial inquiry (*see* Court File No. 67, Exh. 1). Defendant Swafford in his affidavit filed under seal states he consents to the continued representation after consultation with outside counsel (*see* Court File No. 77). The Court need not decide whether these efforts are sufficient for Defendant Swafford's current defense counsel to continue its representation of him in compliance with their ethical duties under the Tennessee Rules of Professional Conduct, because the Court's inquiry on this issue does not end with those Rules. Although the Rules may provide some guidance as to whether a conflict exists, the Court is bound by its greater obligations under the United States Constitution to assure Defendant receives a fair trial.

The Government has pointed the Court's attention to *United States v. Arrington*, in which defense counsel was disqualified because of a conflict with his own interests where he had been accused of improper and possibly unethical or criminal conduct. 867 F.2d 122 (6th Cir. 1989). In that case, there were allegations the defense counsel had participated in a plot to silence government witnesses after the defendant's trial commenced, therefore the defense counsel had a conflict because of allegations of his own misconduct. The Sixth Circuit upheld the district court's disqualification of this counsel and refusal to accept the defendant's waiver of the conflict because

12

it found the attorney would have "strong incentive to conduct the trial in a manner that would minimize counsel's own exposure." *Id.* at 129. While the Court certainly will not speculate whether the attorney or attorneys whom Defendant Swafford consulted prior to his indictment engaged in any activity that could later be found to be in appropriate, unethical, or criminal, this possibility presents another possible conflict of interest because his present counsel's representation of the client may be materially limited by their own interests with regard to possible allegations of misconduct by their law partner or partners.

### C. Disqualification of Counsel Because of Conflict of Interest

The Sixth Amendment to the Constitution guarantees that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The United States Supreme Court has stated the purpose of requiring the assistance of counsel "is simply to ensure that criminal defendants receive a fair trial." *Strickland v. Washington*, 466 U.S. 668, 689, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Additionally, the Supreme Court has noted "the appropriate inquiry [in Sixth Amendment claims] focuses on the adversarial process, not on the accused's relationship with his lawyer as such." *United States v. Cronic*, 466 U.S. 648, 657, n. 21, 80 L. Ed. 2d 657, 104 S. Ct. 2039 (1984). Therefore, a criminal defendant has only a qualified right to his *preferred* defense counsel. "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat,* 486 U.S. at 159 (*citing Morris v. Slappy*, 461 U.S. 1, 13-14, 75 L. Ed. 2d 610, 103 S. Ct. 1610 (1983); *Jones v. Barnes*, 463 U.S. 745, 77 L. Ed. 2d 987, 103 S. Ct. 3308 (1983)).

13

The Supreme Court in *Wheat* considered a defendant's right to choose as his counsel an attorney who had represented other defendants charged in the same conspiracy, presenting the possibility of a former-client conflict of interest. The *Wheat* court stated, with regard to the defendant's attempt to waive the potential conflict of interest,

> Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pretrial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them.
>
> For these reasons we think the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.

*Id.* at 162-63. The *Wheat* Court also noted the risk "the Government may seek to 'manufacture' a conflict in order to prevent a defendant from having a particularly able defense counsel at his side; but trial courts are undoubtedly aware of this possibility, and must take it into consideration along with all of the other factors which inform this sort of a decision." *Id.* at 163. However, the Court found no such issue in that case, and further found, since the Government did plan to call the former client to testify, the attorney would be unable to ethically cross-examine his former client on behalf of his current client.

14

The Supreme Court stated, in conclusion, "**[t]he District Court must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict.**" *Id.* at 164 (emphasis added). While, as defense counsel pointed out at the hearing, the situation facing the Court here is quite different from that in *Wheat* (not a former client conflict, but rather a potential conflict with the lawyer's own or his law firm's interests), the same issue of ability to fulfill duties of cross-examination of a witness on behalf of a client comes up in this case, and here, as in *Wheat*, the Court does not believe the Government intends to call the attorney witness or witnesses merely to manufacture a conflict for disqualification.

The Sixth Circuit has only once examined the disqualification of counsel issue in a case in which a defendant sought to assert the advice-of-counsel defense. *See United States v. Timmer*, 1995 U.S. App. LEXIS 37057 (6th Cir. 1995). In that case, a criminal defendant was charged with bankruptcy fraud and the same attorney who represented him in the bankruptcy proceedings in which he was alleged to have committed fraud represented him in the criminal proceedings. The Sixth Circuit upheld a magistrate judge's decision to disqualify the attorney under *Wheat* following the magistrate judge's reasoning the attorney was likely to be called to testify by the government even if he was not called by the defense; the defendant needed independent counsel to advise him whether he should assert an advice-of-counsel defense; and "**developments during the trial itself might well give rise to a need for [the attorney] to testify even if the defense could not foresee those developments prior to trial.**" *Id.* at *3-4 (emphasis added). The magistrate judge also specifically made a finding of fact "the government was not simply trying to gain a tactical advantage by putting defense counsel out of play." *Id.* The Sixth Circuit upheld this decision to

15

disqualify even though neither party ultimately called the attorney as a witness at trial, noting the language in *Wheat's* analysis regarding the difficulty of making the decision to disqualify before the trial begins, without the benefit of hindsight.

The Court finds here, the Government likely has demonstrated if not an actual conflict, "a serious potential for conflict," which is sufficient to overcome the presumption in favor of a defendant choosing his own counsel and to justify disqualification of that counsel. *See Wheat*, 486 U.S. at 164.

Defendant Swafford has not presented any legal arguments to support a decision not to disqualify his counsel, rather, he has consistently argued this issue is too speculative before trial, since he does not know whether he will testify on his own behalf and will not know that until he sees what proof the Government puts on in its case in chief (*see* Court File No. 64), and argued his present counsel is not laboring under any conflict. The Court has determined it must decide this issue at the outset, no matter how speculative its analysis may be, because the stakes are so high. If the Court withholds a ruling on this issue and an actual conflict arises at trial, the Court will then have to stop the trial, allow Defendant to obtain replacement counsel, give that replacement counsel time to get up to speed on the case, and then pick up the trial at a later date. The Court also might have to declare a mistrial. The Government might be precluded from trying Defendant Swafford again because of double jeopardy. The Court finds the wiser path is that recommended in *Wheat*, to settle the issue before trial, as difficult as that might be. Following *Wheat's* analysis, as followed by the Sixth Circuit in *Timmer*, the Court rejects Defendant Swafford's waiver of the conflicts or potential conflicts of interest with his current defense counsel. The Court does not believe Defendant Swafford's current defense counsel is capable, despite its very best efforts, of giving

16

Defendant Swafford effective assistance of counsel as required by the Sixth Amendment. Therefore, the Court finds the presumption in favor of Defendant Swafford choosing his own counsel has been overcome in this case, and the Court will disqualify his current counsel.

**III.     Conclusion**

After reviewing all the facts now before the Court, finding a conflict of interest presently exists and others may arise during the course of trial, and following the Supreme Court's guidance in *Wheat*, the Court finds it must disqualify Defendant Swafford's present counsel from further representation in this matter. The Court did not come to this decision lightly, realizing it will require Defendant Swafford to retain replacement counsel, which will be required to duplicate, at least in part, the efforts his present counsel have undertaken over more than a year of defending Defendant Swafford against the pending charges. However, to ensure a fair trial in accordance with the Sixth Amendment of the Constitution, the Court was bound to come to this conclusion. The Court will therefore **DISQUALIFY** attorneys from the law firm of Shumacker, Witt, Gaither & Whitaker, PC from any further representation of Defendant Swafford in this matter.

An Order shall enter.

**/s/**
**CURTIS L. COLLIER, CHIEF**
**UNITED STATES DISTRICT JUDGE**

17